UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| COMPUTERIZED SCREENING, INC., | Case No. 2:14-cv-00573-RFB-NJK |
| Plaintiff, | ORDER DENYING MOTION TO DIMISS |
| v. | OR FOR TRANSFER OF VENUE |
| HEALTHSPOT INC., | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Computerized Screening, Inc. ("CSI"), a Nevada corporation, has filed suit against Healthspot Inc. ("Healthspot"), a Delaware corporation, in the District of Nevada, alleging that Healthspot infringed on a patent CSI holds by "making, having made, using, selling, offering for sale, and/or importing" an infringing product.  Compl. ¶ 20, ECF No. 1.  Claiming that it lacks contacts with Nevada sufficient to subject it to personal jurisdiction and that a Nevada venue is improper, Healthspot has, in the instant motion, moved to dismiss CSI's complaint under Fed. R. Civ. P. 12(b)(2) and (3).  Alternatively, in the event it is subject to the personal jurisdiction in Nevada, Healthspot has requested a transfer of venue to the Northern District of Ohio.  This Court, for the reasons discussed below, finds that Healthspot is subject to personal jurisdiction in Nevada and that venue is proper.  Additionally, this Court finds Healthspot's argument for transfer of venue unpersuasive.

## II.    BACKGROUND

For purposes of this motion to dismiss for lack of personal jurisdiction, the Court's considers the pleadings and affidavits in the light most favorable to CSI.  Graphic Controls Corp. v. Utah Med. Products, Inc., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

### A. Facts

The following facts are alleged by CSI. CSI is a Nevada corporation with its principal place of business in Reno, Nevada. CSI alleges that it is the owner of United States Patent No. 6,691,436 (the "'436 Patent"). The '436 Patent is titled "Health Care Information System" and allegedly protects "health monitoring kiosks that measure blood pressure or weight and transmit the data through a network to store the measurement data in remote data storage." Compl. ¶ 10, 14, ECF No. 1.

Healthspot is a Delaware corporation with its principal place of business in Dublin, Ohio. Compl. ¶ 4, ECF No. 1; Cashman Decl. ¶ 2, ECF No. 11-1. Healthspot is a manufacturer of medical kiosks "that enable remotely-located healthcare providers to provide near real-time medical care to patients." Cashman Decl. ¶ 3, ECF No. 11-1; accord Compl. Exs. 2, 3.

On or before April 4, 2013, CSI met with Healthspot in Reno, Nevada to discuss CSI's understanding that Healthspot's kiosk infringed upon the '436 Patent. Cashman Decl. ¶ 26, ECF No. 11-1. At that time, CSI told Healthspot that it believed Healthspot's kiosk was infringing on the '436 Patent. Cashman Decl. ¶ 26, ECF No. 11-1. CSI then offered to license its technology to Healthspot for use in their kiosks. Id.

CSI alleges that after Healthspot was put on notice that their kiosks might infringe upon CSI's patent, Healthspot attended the National Association of Chain Drug Stores ("NACDS") tradeshow in Las Vegas, Nevada in August 2013. Bluth Decl. ¶¶ 3–5, ECF No. 16. There, the President of CSI and named inventor of the '436 Patent Charles Bluth stated that he witnessed Healthspot demonstrating and advertising the accused product. Id. Healthspot denies ever attending the NACDS tradeshow, but admits to visiting Nevada on at least three prior occasions for trade shows. Cashman Supp. Decl., ¶ 4–6, ECF No. 19. However, Healthspot asserts that the last time the accused product was in Nevada was for the National Council of Behavior conference on April 8–9, 2013. Id. at ¶ 6.

Following the alleged demonstration at the NACDS tradeshow, CSI alleges it engaged in correspondence with Healthspot in an attempt to resolve the dispute out of court. Hoekel Decl. Ex. 1, ECF No. 15. CSI once more offered to license the technology to Healthspot and informed

1  them that if they did not reach a licensing agreement CSI would be compelled to take legal action.
2  Id. at 6.  In response Healthspot offered to demonstrate their kiosk for CSI in order to alleviate
3  CSI's concern that Healthspot was infringing upon the '436 Patent.  Id. at 5.  CSI replied that a
4  demonstration would not be necessary since they believed they had sufficient information to
5  support their allegation of infringement.  Id.  CSI further stated that if a licensing agreement was
6  not reached by April 11, 2014, they would be compelled to take legal action.  Id.  Healthspot
7  warned CSI that if they filed a patent infringement action against Healthspot without further
8  examination of the accused product, they would be in violation of Federal Rules of Civil Procedure
9  11.  Id. at 4.

10  The parties then scheduled a conference call for 10:00 am on April 15, 2014 to attempt to
11  resolve the dispute.  Id. at 1–2.  On April 14, after scheduling the conference call, Healthspot filed
12  a suit in Ohio seeking declaratory judgement stating that Healthspot's kiosk did not infringe upon
13  the '436 Patent.  Id.; Cashman Decl. ¶ 32, ECF No. 11-1.  On April 15, 2014, after receiving notice
14  of the Ohio suit, CSI filed this lawsuit, in Nevada.  See Compl.., ECF No. 1.

15  **B.  Procedure**

16  On April 15, 2014, CSI filed the Complaint in the present case in the District of Nevada.
17  ECF No. 1.  In its Complaint, CSI alleges one cause of action.  Id.  CSI claims Healthspot infringed
18  on a patent CSI holds by "[making], using, selling, offering for sale, and/or importing" an
19  infringing product.  Id. at 3.

20  On June 30, 2014, Healthspot filed the instant Motion to Dismiss for lack of personal
21  jurisdiction.  ECF No. 11.

22

23  **III.     PERSONAL JURISDICTION**

24  **A.  Legal Standard**

25  Federal Circuit—rather than regional circuit—law applies when determining whether a
26  court has personal jurisdiction in patent infringement actions.  Nuance Commc'ns, Inc. v. Abbyy
27  Software House, 626 F.3d 1222, 1230 (Fed. Cir. 2010).  Absent discovery on the matter, a plaintiff
28  is only required "to make a prima facie showing of jurisdiction to defeat [a defendant's] motion to

dismiss." Med. Solutions, Inc. v. C Change Surgical LLC, 541 F.3d 1136, 1140 (Fed. Cir. 2008) (internal quotation marks omitted). In order to determine whether a plaintiff has made a prima facie showing of personal jurisdiction over the defendant, the trial court must construe all pleadings and affidavits in the light most favorable to the plaintiff. Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation, 297 F.3d 1343, 1347 (Fed. Cir. 2002) (citing Graphic Controls, 149 F.3d at 1383 n.1).

When determining whether a court has jurisdiction over a defendant, the court must examine "whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Because Nevada's long-arm statute, Nev. Rev. Stat. § 14.065, permits Nevada courts to exercise jurisdiction to the same extent as the Constitution, this Court need only consider the constitutional principles of due process. Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

### B. Analysis

CSI argues that this Court has general jurisdiction over Healthspot. In the alternative, CSI argues that this Court has specific jurisdiction over Healthspot. The nature and number of the defendant's contacts with the forum state informs whether this Court can exercise either general or specific personal jurisdiction. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009). The Court finds that, although it lacks general jurisdiction over Healthspot, it can exercise specific jurisdiction in the instant case.

#### 1. General Jurisdiction

General jurisdiction requires that the defendant's contact be "sufficiently 'continuous and systematic'" with the forum state. Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citations omitted) (finding no general jurisdiction over a defendant who had made numerous product shipments to the forum and had attended a tradeshow in the forum). The defendant's contacts with the forum state must be "so constant and pervasive as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (alteration in original) (internal quotation marks omitted).

CSI fails to meet the high threshold required to establish general jurisdiction over Healthspot. Healthspot is a company incorporated in Delaware with its principle place of business in Ohio. There are no allegations that any of Healthspot's employees or officers live in Nevada nor are there allegations that Healthspot owns any property in Nevada. Although Healthspot has visited Nevada on several occasions with the accused product, demonstrated the accused product in Nevada, and corresponded with and instituted a claim against a Nevada resident, these contacts are insufficient to render Healthspot "essentially at home" in Nevada.

### 2. Specific Jurisdiction

To establish specific jurisdiction a defendant must "have certain *minimum contacts* with [the forum] such that the maintenance of the suit does not offend traditional notions of *fair play and substantial justice*." Inamed Corp., 249 F.3d at 1360 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This "minimum contacts test" has three-prongs: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998). The plaintiff has the burden of satisfying the first two prongs of the test. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996). The burden then shifts to the defendant to make a compelling case that jurisdiction would be unreasonable. Id.

### a. Purposeful Availment

The purposeful availment requirement (also known as the purposeful direction requirement) "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The Court may consider a number of factors in evaluating purposeful availment. In Beverly Hills Fans Company v. Royal Sovereign Corporation, the Federal Circuit held that the fact that the defendant shipped the accused product into the forum state after being put on notice that the accused product might infringe upon the plaintiff's patent weighed in favor of finding purposeful availment. 21 F. 3d 1558, 1567–68 (Fed.

Cir. 1994).  The Federal Circuit has also found that interstate communications addressing the accused product and visits to the forum state by the defendant to discuss surrounding infringement issues are "relevant contacts" that demonstrate that the "defendants purposefully directed their activities" towards the forum state.  Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1351 (Fed. Cir. 2003).

Based on CSI's allegations, Healthspot's actions satisfy the purposeful availment prong of the "effects test."  CSI alleges that Healthspot attended the NACDS tradeshow after being put on notice that their kiosk might infringe on the '436 Patent.  Healthspot asserts that they never attended the NACDS tradeshow, but, because the Court must resolve such disputed facts in favor of the plaintiff, this assertion is presently irrelevant.  See Deprenyl, 297 F.3d at 1347 ("[A]ll factual disputes must be resolved in [Plaintiff]'s favor in order to evaluate its prima facie showing of jurisdiction.").  Healthspot visited CSI in Reno on April 4, 2013 to discuss the very issue of whether Healthspot's kiosk infringes on the '436 Patent.  Additionally, Healthspot was corresponding with CSI for several months in an attempt to resolve the issue outside of court.  Therefore, the possibility of litigating a civil suit arising from the '436 Patent would not be a surprise to Healthspot.

Additionally, Healthspot's filing of the Ohio claim is relevant in determining whether it purposefully availed itself to Nevada's jurisdiction, because the Ohio suit is also an action purposefully directed at a resident of Nevada.  "The central purpose of a declaratory action is often to clear the air of infringement charges."  Inamed Corp., 249 F.3d at 1362 (internal quotation marks omitted).  Here, Healthspot demonstrates this "central purpose" when it asserted that it filed the Ohio declaratory action to resolve the dispute.  Mot. to Dismiss 2, ECF No. 11.  Certainly, a judgment in favor of (or, for that matter, against) Healthspot in the Ohio proceeding would affect CSI in Nevada.  For example, if it is determined that Healthspot's kiosk does not infringe upon the '436 Patent, CSI could lose market share for its products.  The effects of Healthspot's Ohio claim on CSI in Nevada are further compounded by the fact that negotiations about the accused product were still ongoing at the time the suit was filed.  In sum, the filing of the Ohio suit is also an act purposefully directed towards Nevada and therefore weighs in favor of finding that Healthspot

purposefully availed themselves to Nevada.

In conclusion, Healthspot purposefully directed activities at Nevada. Its alleged use in Nevada of the accused product after being put on notice of its potentially infringing characteristics, visits to Las Vegas and Reno, and commencement of a related civil action against a Nevada resident demonstrate that facing civil liability in the instant case was not "random, fortuitous, or attenuated" nor due to "unilateral activity of another party." See Avocent Huntsville Corp., 552 F.3d at 1329 (quoting Burger King Corp., 471 U.S. at 474).

### b. Relation to Specific Forum Activities

To satisfy the second prong of the "effects test," the plaintiff must make a prima facie showing that their claim "arises out of or related to" the defendants activities in the forum state. Burger King Corp., 471 U.S. at 472. This prong is not, as general rule, the "even higher hurdle" that Healthspot suggests. Mot. to Dismiss 10:24–25, ECF No. 11; See Inamed Corp., 249 F.3d at 1362 (holding that it is a broad standard—the defendants' actions in the forum state must either give rise to *or* relate to the claim). In Synthes, the Federal Circuit determined that the plaintiff's claim was sufficiently related to the activities of the defendant in the forum state because the defendant displayed a product accused of infringing on the plaintiff's patent at a trade show. 563 F.3d at 1298. The court reasoned that the defendant was displaying the accused product at the tradeshow in order "to generate interest" in their product to the commercial detriment of the plaintiff. Id.

Here, CSI alleges Healthspot's sales personnel demonstrated the accused product in Nevada before and after Healthspot was put on notice by CSI that Healthspot's kiosk might infringe on the '436 Patent. As in Synthes, Healthspot's actions at tradeshows would also generate interest in its kiosk to the detriment of CSI. Ultimately, CSI has made a prima facie showing that the claim arises out of or is at least related to Healthspot's activities in Nevada.

### c. Reasonableness/Fair Play and Substantial Justice

A defendant can defeat personal jurisdiction on constitutional grounds if she can make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" because it offends traditional notions of fair play and substantial justice. Burger

King, 471 U.S. at 477–78.  The factors used to determine whether exercising personal jurisdiction would be reasonable are: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."  Electronics For Imaging, Inc., 340 F.3d at 1352.  Situations "in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable" are "rare."  Id.

Healthspot fails to make a sufficiently compelling argument that would render exercise of personal jurisdiction constitutionally unreasonable.  First, the burden of traveling to Nevada for litigation placed on Healthspot (which has made at least five trips to Nevada in less than two years) is not constitutionally unreasonable.  See Inamed Corp., 249 F.3d at 1363 (concluding that even if it were true that a defendant was so ill that he could not stand or sit for longer than one-half hour at a time and was unable to travel long distances, a finding of personal jurisdiction in the forum state was not so unreasonable as to make it unconstitutional); Synthes, 563 F.3d at 1299 (internal citations omitted) ("The burden on [Defendant] is significant, in that [Defendant] will be required to traverse the distance between its headquarters in Brazil and the district court in California . . . . We note, however, that 'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'  In addition, for at least the last five years, [Defendant] representatives have traveled to the United States for, among other things, trade shows, which suggests that, as far as [Defendant] is concerned, travel itself is not unduly burdensome.").  Second, Nevada has a substantial interest in protecting its residents from patent infringement. See Electronic Imaging, Inc., 340 F.3d at 1352.  Third, CSI has an interest in preserving its patent rights and, as a plaintiff, has an interest in litigating in a convenient forum.  Fourth, although Healthspot has filed a complaint for declaratory relief in Ohio, it is still pending and can be consolidated with the current action.  See id.  Finally, there is no conflict between the interests of Nevada and Ohio "as the same body of federal patent law would govern the patent invalidity claim irrespective of the forum."  Id.

. . .

In conclusion, because Healthspot has sufficient minimum contacts with Nevada, this Court has specific personal jurisdiction over Healthspot, and Healthspot's motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(2) is denied.

IV.     VENUE PROPRIETY

In moving to dismiss pursuant to Fed. R. of Civ. Proc. 12(b)(3), Healthspot argues that venue is improper in Nevada. However, this issue is foreclosed because this Court has personal jurisdiction over Healthspot and, by extension, venue is proper. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("[V]enue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced."); 28 U.S.C. § 1391(c). Accordingly, Healthspot's motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(3) is denied.

V.      VENUE TRANSFER

Healthspot argues that, even if it is subject to personal jurisdiction in Nevada, the suit should be transferred to the Northern District of Ohio. Mot. to Dismiss 13:1–2, ECF No. 11.

### A.  Legal Standard

Whereas Federal Circuit law guides personal jurisdiction, local circuit law determines venue transfer issues. Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003). Pursuant to 28 U.S.C. § 1404, a district court may transfer a case to another district if it serves the "convenience of parties and witnesses" and otherwise promotes "the interest of justice." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013). When determining whether to transfer a case, courts examine various public and private factors. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Generally, great weight is generally accorded to a plaintiff's choice of forum. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

B. Analysis

1. Public Factors

The relevant public factors weigh in favor of keeping the claim in Nevada. These factors include "local interest in having localized controversies decided at home" and "the avoidance of unnecessary problems in conflict of laws." Decker Coal Co., 805 F.2d at 843. As stated previously, Nevada has an interest in resolving the claims of its residents. Additionally, since Federal Circuit law is controlling in patent issues, there will be no conflict of laws. Transferring the claim to the Northern District of Ohio would not alleviate any public burden—it would merely transfer it.

Anticipatory filing of a declaratory action in an infringement suit is also a factor. Electronics For Imaging, Inc., 340 F.3d at 1351. Although this Court recognizes that the "first-to-file" rule generally controls, it is not without exception. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982) (The "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."). Courts disfavor the "first-to-file" rule when the first claim was filed in bad faith, was an anticipatory suit, or was filed for the purposes of forum shopping. Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991).

Consequently, Healthspot's claim for declaratory judgment in Ohio weighs against transferring. Healthspot admittedly filed the Ohio action in anticipation that negotiations would continue to fail leaving CSI compelled to file a claim for patent infringement. Mot. to Dismiss 16:23-17:10, ECF No. 11. Furthermore, based on CSI's allegations, Healthspot filed the claim in bad faith. The claim was allegedly filed fifteen minutes after CSI and Healthspot scheduled a conference call in hopes of resolving the issue outside of court. Resp. to Mot. to Dismiss 3:10–11, ECF No. 13. Invoking the potential of Rule 11 sanction, Healthspot dissuaded CSI from filing suit before examining the accused product. Healthspot then filed the complaint for declaratory relief in Ohio during the time period when it had persuaded CSI to await the outcome of further negotiations. The record supports a prima facie conclusion that Healthspot's tactics here were gamesmanship and arguably deceptive. This Court will not, in effect, reward such behavior with

a choice in forum.

### 2. Private Factors

The relevant private factors also weigh in favor of keeping the claim in Nevada. These factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses … and all other practical problems that make trial of a case easy, expeditious and inexpensive." Decker Coal Co., 805 F.2d at 843 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). A plaintiff's choice in forum is accorded great weight. Lou, 834 F.2d at 739.

This Court recognizes that the bulk of relevant evidence in patent infringement cases usually comes from the alleged infringer and, therefore, weighs in favor of transferring to that location. See In re Genetech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, this does not mean that the mere fact that it is a patent infringement claim justifies transfer to the defendant's home forum. Importantly, beyond the conclusory statement that "relevant documents regarding the technical aspects of [Healthspot's kiosks] and services are also located in Ohio," Healthspot has failed to provide any facts demonstrating that litigating a patent claim in Nevada would be so impermissibly inconvenient as to outweigh the CSI's choice in forum. Mot. to Dismiss 15:8-12, ECF No. 11.

Therefore, this Court finds that the Healthspot has failed to make the required showing of inconvenience in order to transfer the case to the Northern District of Ohio.

. . .

. . .

. . .

VI.     CONCLUSION

As CSI has made a prima facie case for specific personal jurisdiction, Healthspot's Motion to Dismiss must be denied.  Healthspot may re-raise the issue of personal jurisdiction later should evidence be available that supports such a motion at that time.  Furthermore, Healthspot has failed to make the requisite showing to transfer the case to the Northern District of Ohio, and its Motion to Transfer is similarly denied.  Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction, Improper Venue or, In the Alternative, to Transfer, ECF No. 11, is DENIED.

Dated: July 28, 2015

_____
RICHARD F. BOULWARE II
UNITED STATES DISTRICT JUDGE